Thank you. May it please the court, my name is Wayne Arnett. I'm a lawyer in Tempe, Arizona. I represent Leticia Valdez, a resident of Yuma County, Arizona, in this lawsuit against Allstate Insurance Company. I would like first to address the question that was presented to us in order from this court about jurisdiction briefly, and then I would prefer to reserve the rest of my time for rebuttal on the merits of the appeal itself. With respect to jurisdiction, the direct question that was asked us is whether the district court ever made any determination as to the amount in controversy of the $75,000. And the simple answer to that question is no. The district court never made any, there was never a judicial determination as to whether or not the amount in controversy was met in this case. The petition for removal was simply made and the matter was removed from the Yuma County Superior Court. On information and belief? On information and belief. That doesn't meet any standard I know of. Do you know of any standard that that meets? I don't. Is it your position that jurisdiction has not been established? It is. I don't believe that it has. And I'll tell you, the petition does say upon information and belief the amount exceeds $75,000 and it refers to the complaint. In the complaint we have one count for bad faith. We don't have a count for breach of contract because the contractual benefits were all paid eventually after forcing our client to go through arbitration and to have the additional expense and delay associated with that. It's $50,000. Then it says plus attorney's fees plus punitive damages. That's all speculative. And so your position is the determination has not been made. In that situation, do you understand the law to be that we refer it back to the district court to make a determination as to whether or not there is jurisdiction and if the district court finds there is not, it would be remanded to state court? That's one way to proceed. I noticed in the Goss case that was referred to in the order, you did it the other way. You actually, this court simply remanded it back to the district court with instructions to remand it to state court. And I think that's probably, I mean, I don't think the district court will have anything in front of it that you don't have, and that is the petition and the complaint. And I guess I would prefer to have you make that decision here now. I don't think there is jurisdiction. I think you should consider doing what you did in Goss, which is simply remand it with instructions to remand it to state court. But either way, I don't think there's jurisdiction here. And a couple, I mean, we were ordered in this case to appear at a settlement conference, which we did in front of a judge magistrate, magistrate Judge Mathis. And at that settlement conference, I expressed a willingness in that settlement conference to settle for less than $75,000. And perhaps that's good evidence, I think, of the amount in controversy here is what we're willing to settle for. So on that note, though, what we don't want to have happen, and I realize we're stuck with the record, but what we don't want to have happen is for this case to get remanded for state court. Then you file a statement of claim indicating that you're seeking more than $75,000 worth of damage, and then boom, removal goes up with a definite statement. Is that what's going to happen here? In Arizona, we don't have a statement of claim procedure. We're permitted in Arizona to sue for just and reasonable damages. And in fact, in every case I file, I don't have a specific amount in the complaint. So we get down now, then, to the final pretrial order in state court, and you identify how much you're seeking, or whatever point you have in Arizona where you're identifying how much you're seeking. At that point, then, the right to removal would be triggered if it's more than $75,000. I don't know of a procedure in Arizona where you have to set forth an amount, including through the jury trial. I mean, I've stood in front of jurors and told them, give me what's reasonable and not suggest an amount, and there's no procedural rule in state court that requires you to set forth an amount that you're seeking, and I wouldn't intend to in this case. But certainly, you're right in this respect, that I guess a jury could render a verdict in excess of $75,000, but I don't think that would then trigger a remand or a removal at that point. But I guess you're standing here as an office of the court telling us, although you're not obligated to, but you're telling us that it's not your intent in state court to seek in excess of the jurisdictional amount. It is not my intent. It's my intent to ask the jury to set a just and reasonable amount for damages, both punitive. But as an officer of the court, I'm telling you I will be surprised if that exceeds $75,000, and I've offered to settle the case for less than that. Okay. But I don't think that necessarily precludes a verdict higher than that. No, I understand your position completely. Okay. So I think unless the court has questions about the merits of the appeal itself, I would prefer to reserve what time is left for me for rebuttal on those issues. Okay. Thank you. Good morning. May it please the court, I'm Keith Forsyth, and I represent the Appalese. With regard to this jurisdictional issue, the very first time that I've ever heard anything from the appellant's side that even hinted that they disputed what we said in our removal petition about the amount in controversy was today. But don't blame him. We brought it up. I don't. This court would be the last place I would want to assign blame. But I would like to suggest a couple of things. Judge Wallace, number one, the complaint in state court said as to the compensatory damages, this party was going to seek in excess of $50,000. That much is true. The complaint also seeks punitive damages, and we know from a fairly long line of authority that the amount in controversy analysis may consider the punitive damages at stake. We also know that there were financial losses alleged in the complaint, although unspecified, including the obligation by this claimant to pay additional attorney's fees, and also I would assume the opportunity cost that she lost with the money, albeit rather modest. And finally, they do seek statutory attorney's fees. I know, but they're not identified. They could be $2 or $200, and that looks like $200,000. It looks like it's speculative. What's your best case that we could say that that would not, by our eyes, ever be more than $25,000? In terms of the attorney's fees exposure? It would always be more than $25,000. Attorney's fees and punities have to get up over $75,000 for us to have jurisdiction to rule. The first thing that I would suggest, Judge, I don't want to interrupt as you finish. No, I was just asking for your best case. Sure. What case do you have that we can just guess that it would be over $25,000? In terms of punitive damages exposure? Either one or both. Well, I can give you a couple of different cases. Number one, Zillage, which is one of the cases closest to the facts in this case, produced punitive damages of approximately $450,000. No, I'm not saying that. I'm saying what case is there that rules us in making our ascertainment? In other words, we have cases that say the term in excess of $50,000 isn't enough. That's speculative, and we won't allow that. What case do you have that, in addition to the in excess of, could tell us that we really have jurisdiction in this case? I don't think I can give you such a case, Judge. And here's part of the problem that we face in Arizona State Court. Our rules of civil procedure in Arizona prevent a plaintiff from specifically alleging in their complaint what they're seeking for intangible harm, what they're seeking for punitive damages, what they're seeking for attorney's fees. If I remember right, it's Rule 10 of our civil rules. The purpose of that rule is to avoid the kind of grandstanding complaint where a plaintiff says theatrically, I want a million dollars. They aren't allowed to do that by rule. That's no longer grandstanding. Well. That still isn't Arizona. Right. A million dollars isn't worth what it used to be. Maybe Montana. But they can say in excess of $75,000 instead of in excess of $50,000. I would suggest they cannot. In this case, they did judge, but consistent with our state court rules, as a defendant, the only way that I can come to court under diversity is to ask for some kind of assumptions. And it's done routinely. If it shouldn't be, then we're making mistakes. And the reason why I say there are certain assumptions we have to make is because at the time of removal, the pleadings, if they comply with Arizona rules of civil procedure, won't tell this court or any other court what the true amount at stake is. Oh, that's true. That occurs. But in this case, the prayer asked for a sum in excess of $50,000. It could have said in excess of $75,000, and we wouldn't have raised the question at all. But here's why I'm not sure I understand why one poses a question for this court and the other does not. If you accept for the moment that they're already telling this court we want in excess of $50,000 for the compensatory damages, then the inquiry goes to the punitive damages and attorney's fees exposure that we started to talk about. We know that although Campbell v. State Farm has put some rules down to try and put some boundaries on the extent of punitive damages which may be awarded, there are still multiples contemplated by that opinion up to nine or ten times the compensatory damages. Yeah, but under that logic, anytime anybody asks for punitive damages at all, then that's automatically removable, and that's not what our cases say. I understand that. You can't speculate as to what they're seeking. I gather, do you agree with your colleague that Arizona doesn't have a procedure as we do in Montana where you may, although we have the same prohibition, you can file a request for a statement of claim? You can't, and if you tried, typically what the response would be is it's work product, it's trial strategy, you don't get to hear what I'm thinking as a lawyer, and we'll let you know at trial. That's why we're in a bind in state court in Arizona. If we want to remove something. Well, what about this? Let me just posit this to you. Let's say you submit a request for admission that the damages do not exceed $75,000. You could do that, couldn't you? You could. Typically you'd get the same kind of response that it's not an appropriate topic for it. Basically the practice in Arizona state court is those sorts of things aren't known and aren't necessarily knowable if that's a valid objection. That's why I get back to how do I get my clients into court under diversity jurisdiction when it's evaluated, the jurisdictional amount and controversy, at a stage in the proceedings that no one knows for sure the total amount at stake. For example, you know from state law cases that $100,000 in emotional distress damages have been awarded in bad faith cases, arguably with facts more severe than this, but we could be at the end of discovery in this case rather than at the jurisdictional analysis stage. And I still couldn't tell this Court other than to point to the claimed harm and ask this Court to quantify it. Well, you attempted to do that with your petition to remove by saying upon information and belief plaintiff submits that it's in excess of $75,000. Petitioners submit that it's in excess of $75,000. What more could you have said besides information and belief to give some substance? That's question one. And question two is if there isn't anything else you could say, what case do you rely on that says information and belief is sufficient to get to diversity jurisdiction over $75,000? First, at the stage that the petition was submitted, we did not have any other information that I would submit to this Court would meaningfully guide the trial court, the district court, in the amount in controversy. I did not have, for example, the benefit of any discovery requests. I would suggest that if there was a settlement demand, and I don't think there was, but if there's a settlement demand, that's not an appropriate kind of document to submit. But you pleaded on the basis of information and belief. What's the information that led you to the belief? Well, first, it's a relatively long line of experience. There isn't a bad faith case that my client has been sued for in which a plaintiff has been willing to say, and today they weren't willing to say either, that my case will never be worth more than $75,000. That's why there was no remand motion here, because the plaintiff did not want to get bound, and they're still trying to avoid getting bound here today with the admission that the amount at stake, including attorney's fees and punitive damages, will never exceed $75,000. But I submit to you, Judge, that even if I had finished discovery, I would still be doing little more than giving you my professional opinion about the amount at stake, because it's not knowable in a lot of ways for the very reasons we described. You don't ask about it because you won't get told. There's no discreet rule that triggers it. Well, isn't that a legislative problem rather than a judicial problem for us, though? I mean, that's the peculiarities of Arizona state law. It does leave the citizens of Arizona with maybe a gap that other states have the benefit of. I know on the defense side of the bar, we'd love to have that admission by a plaintiff of the amount that's actually at stake. You could make an offer of judgment for $75,000 at $1, I suppose. There's my ticket, sounds like. So where does that leave us? What case do you have that says it's sufficient to say information and believe? I don't judge, but I don't have a case that supports information and belief. But I want to suggest to you that that is about the only thing that anyone on the defense side can assert to the court in good faith when intangible harm is at stake. It would be a lot easier if it was liquidated damages and it was a $100,000 house that citizens of different states were disputing. We don't have that here. This is almost purely intangible harm. The liquidated part of the case is easy to look at, you know, the lost opportunity of the $15,000 in benefits. But I'd suggest to this Court that this case is not much different from any other. You may be asking for something that is not knowable in Arizona State court. If we remanded this case to the district court to find facts of whether or not he has jurisdiction, he would be in a position to ask the plaintiff what his evaluation is and provide the necessary data. He could hold a hearing. She. She could hold a hearing and make that determination, and we'd have a record. Is that an appropriate way to solve the problem? I agree it's an appropriate solution. First, the district court is better, not better equipped, but is a better forum to have that kind of factual inquiry. You can have a factual inquiry and make a determination. I see your problem. I'm not oblivious to that. I was a trial lawyer for 15 years before I put on the black robe, and I can see the difficulty. I used to love to get into federal court, and it would be unfortunate if local rules interfered with the constitutional right. And maybe we should require the district court to make some sort of factual determination. Okay. Well, that's helpful. Thank you for your time. Can I ask you one question? Just one question on the merits. You're welcome. Yes, Judge. On the merits, on the submission of the release forms on that issue. Yes, sir. The district court basically accepted as true the statement that it was inadvertent. Why isn't that a trial issue fact? Well, the only ---- They claim it's not and it's bad faith. You claim it was inadvertent. Isn't that a factual dispute? I would suggest it's not. What they would have to be arguing, and I think they are arguing, is that there's not a dispute in the facts, because the only facts that we know are what that lawyer says what happened, that he made a mistake. What they'd have to be arguing is you have to accept that it's a disputed inference, it's reasonable. And I would submit you can't, under those facts, characterize that as some kind of conscious, knowledgeable wrongdoing by an insurance company. Why? Because when their agent, when their lawyer does something and the insurance company doesn't even know about it, there's no proof that they requested it, that they sanctioned it, that they authorized it. They're bound by the lawyer's conduct. They are. You know, people get executed for less. Understood, Judge. So I don't – you're not really going to argue here, are you, that the lawyers – I mean, let's say the lawyer decided to swine the other side by slipping in a general release, hoping he doesn't notice. I'm sure that kind of thing doesn't happen in Arizona very often, but let me assure you, in other parts of this country, that kind of thing is not uncommon. Let's say the lawyer, in fact, went to law school in another State and so picked up these bad habits. You're not going to argue here today, are you, that that would not be attributed to the client. I agree that, Judge Kuczynski, it is – You're not arguing that. I am not. Okay. So then why is that a question of fact? If the lawyer, in fact, although he says this was a big mistake, if the jury looks at it or what the trial fact is and disbelieves it, why wouldn't that be within the province of the trial fact? Because, first of all, it's agreed and it's undisputed that the only proof will come from this lawyer. Second, everyone agrees that Arizona law requires – Well, if a lawyer gets on the stand and says, yes, the jury might very well infer that no is the truth, that happens all the time. It can. And it is – and the Court's suggesting that credibility infects that decision, and how could the trial court decide that? Sometimes people hope to get a lawyer on the other side to say something, understand, just so the jury will infer the opposite. I would just suggest, Judge Kaczynski, that what the district court was trying to determine was whether all state deliberately, consciously acted unreasonably. That's a whole lot more than a lawyer, at least under these facts – They also claim lack of investigation, and all we have is the lawyer say so, that he did a good investigation. He doesn't come up with anything. He doesn't back anything up. He just says, oh, well, don't worry, I investigated well. Well, I take your point, Judge Kaczynski, but on this record, the burden to demonstrate triable issues was on the plaintiff, was on the appellant. Well, how about the absence of an evidence of investigation? A lawyer says, I investigated. He can't come up with a darn thing in the file. Normally, lawyers keep stuff in the file. You know why? You know why. Because they get sued all the time, right? No lawyer would do an investigation and fail to keep an evidence of file in case a client comes back to bite him. You would never do that, would you? No, sir. Okay, so when the lawyer gets put on the stand and says, I did an investigation, but I've got nothing but my own word to back it up, you don't think opposing counsel can get up and say no lawyer would do that? The reason he hasn't got any backup is that he didn't do it. It's a big lie. You don't think a jury might buy that? Under appropriate facts, sure, but this record doesn't even remotely support that kind of conclusion. On this record, first of all, this Court doesn't know what the investigation was because it wasn't made part of the record. It wasn't considered apparently important enough or probative enough to beat the summary judgment motion to be submitted by the appellant. In this case, there's two steps in the investigation. Wait a minute, wait a minute. Why isn't that your burden? If you think, if you think there's no problem with your fact because the lawyer's word and backup materials are such that no reasonable inference could be drawn except that the lawyer did an investigation because he has his word and he has his file and look at all the stuff he found, then you would have established the absence of a probable issue of fact. Why do they have to come forward and say, say what? Well, what can they say other than we asked the lawyer if he had any backups and the lawyer said, no, take my word for it, trust me. What else can they provide if there is stuff like that? One of the things that... Why don't you drop it in? One of the things they could provide your... Are you saying there is stuff like that and you just didn't drop it in because you didn't think it was your burden? Well, first I would... Are you saying that? To a degree, and I'll explain why. The burden of proof by the party opposing the affirmative claims for relief is not to demonstrate to the court, here's all the facts in the record, and we don't think that creates a triable fact. We're entitled as a party opposing affirmative claim for relief to suggest to the that there was a bad faith failure to investigate. The burden then shifts to the people who have the affirmative claim for relief to come forward and show the district judge, wait a minute, not only do we have expert proof, which is, of course, lacking in this case, but we've got the entire file here and you can conclude as a matter of... It seems to me they're down to my satisfaction if they say we've got a lawyer with no backup to show his investigation. To me, that's almost conclusive. And if you say, wait a minute, no, wait, wait, there was a backup, here's the stuff showing that there was an investigation, they are mistaken about them, then you can save it, but a lawyer who stands up and says, I got nothing? But we've got to remember that the investigation, to the extent they're arguing... You're saying there is stuff, but you just didn't put it in the record. Because you didn't think it was... As an officer of the court, you're not telling me you had it and you said, well, it's not my burden, I'm not going to put it in. No, Judge, I'm not saying that at all. Of course, that wouldn't be fair because... It sounded to me like you were saying that. It wouldn't be fair for me to represent that to you, Judge, because I wasn't involved in the motion papers. I'm asking you a question. Understood. Try it out loud. But I want to... Do you have the stuff or do you not have the stuff? Is it stuff you have and didn't put in for strategic reason or is it, you know, because you didn't think it was your burden? Or do you simply not have it? Which is it? Judge Kaczynski, there is plenty of information that is not in the record. I'm asking you about the investigation. We're dealing with a specific question as to whether the lawyer who said he did an investigation, and as best I can tell, the record has nothing to back up other than his naked word. And we're now dealing with a question, is there in fact stuff that he had that wasn't put in the record? And you're spying on the question of who had the burden. So I'm cutting through that. I'm saying assume you had the burden and you could go back and do it over. Yes, sir. Is there stuff from the lawyer's file to back up to? Sure. For example, the independent medical examination report from Dr. Stephen Brown. We know it was done. There's no dispute that it was done. There's no dispute that it was reasonable. There's no dispute that it wasn't based upon the proper medical information. There's no dispute that it wasn't submitted to the arbitrator as part of the decision the arbitrator reached. We know that he struggled with what the different doctors had to say. But I can't tell you, Judge Kuczynski, that all of that is in the record. And I have to take the blame for that if the Court believes it was my burden to submit all of the information and then tease out the parts that may or may not demonstrate a triable issue. I just respectfully disagree, sir. But there is definitely other information. For example, you don't have the claims file. That's an important part of the investigation. The argument by the plaintiff ---- Do you provide other stuff to the other side of the discovery? Yes, sir. Okay. I gather your position is that if, assuming that the investigation was inadequate, that even with that assumption, that if the claim is fairly debatable, then there's no liability as a matter of law. Is that your position? It is my position, and, Judge, that's supported by Arizona law. A couple of the cases that were cited in the district court's memorandum and order and also by the parties reflect the Court of Appeals and the Supreme Court's willingness to decide cases as a matter of law and say that there's no bad faith. And a couple of those, one of them is the Horse case, the Lasma case. That case involved the Supreme Court determining as a matter of law there was no bad faith. Voland is another one. That's the case where the Court of Appeals described the valuation process. But what about the evidence of lowballing, of a policy of lowballing claims? Who put it? I'm sorry, Judge Kaczynski. What about the evidence that your client had a policy of lowballing claims? First, that would be important if, in fact, this Court or any court could conclude there was any dispute of facts about whether this claim was lowballed. And we know the parties practically agreed on how much it was worth. This Court knows that in State court in Yuma that the plaintiff certified her case was worth $30,000 or less. My client said the case was fully compensated at $27,000. Well, you know, that's a really cute argument, but I thought they blasted it out of the water, and they're brave. And what they said is, in that case, the dispute with the act defendant who had a policy limit of $25,000, that dispute was $25,000. So I don't know why you keep popping that. Well, Judge, with respect, I would suggest that this Court not buy that argument. That's in their reply brief, and the argument by them is, we only had a $25,000 policy with Safeco, so that's all we really wanted to get. If that was true, Judge Kuczynski, we can get rid of third-party bad faith in Arizona. If we could get the plaintiff's bar to agree that in every case the amount at stake is really only the insurance proceeds, what I'm suggesting is that the amount at stake in a tort litigation in State court is governed by the insurance proceeds. First, we'd never have another third-party bad faith claim. And second, there's an awful lot of cases where people are seeking more than they should. And third, the jury would be told how much the insurance proceeds are, and under Arizona law, the collateral source rule absolutely prevents that. So how can it be that in State court, if this remained there, the jury wouldn't have known how much the Safeco policy was, but somehow, outside of the relevant issues in that case, that Safeco policy defines the amount at stake? I would submit to you the opposite is true. What it was, what was their goal was to create as much tension. I don't understand a word you're saying. What their claim is, look, our dispute with those parties, where the policy amount was $25,000, was $25,000. There's no point in disputing more with them. There's not any more money in that pot. So we, it doesn't mean that's the measure of our damages. It doesn't mean that's the measure of our damages against all States. It doesn't matter that's how much we were harmed. We're simply not going to put in dispute more with that party than that party has on the table. What's so hard about that? There's nothing hard to understand that that's their argument, but judges don't believe it. First of all, this record doesn't support any conclusion by this Court or anyone else that defendant Sanchez in the Valdez versus Sanchez Yuma litigation was as wealthy as Bill Gates or as poor as most of the people in Yuma are. We can't tell. Next, to suggest that somehow the insurance policy of the liability insurer controls the amount at stake in automobile litigation, it just ignores the reality of what happens there. In State court litigation involving tort claims, if that was true, the jury would have to be told how much the liability insurance was. So they could then say, okay, the dispute is within these boundaries, if you accept their argument, and we're going to determine how much within those boundaries you're entitled to get. The opposite is true. That never comes into evidence, and it is at best a rhetorical spin on what happened  I'm not following what you're saying. Why can't they choose to say our dispute with that party is going to be limited in insurance amount? They can, Judge. We simply choose not to claim more than that. They might do it because they think the people are dirt poor. They might think they want to do it because if they claim the policy limits and the insurance company doesn't pay up, then they might have a bad faith claim against that insurance company. But why can't they limit their dispute with that party? Why do they have to put every bit of damage on the stand in dispute in that lawsuit? Why can't they say, look, $25,000 is available for the insurance company. That's how much we're asking. That's our dispute with this party. It's limited to that. Maybe we could sue for more. Maybe we could ask for more. Maybe if this really were Bill Gates driving through Arizona on vacation, we would ask for more. But we don't. And I don't see how you can draw an inference from the fact that they said that dispute with that party, given those circumstances, $25,000, somehow proves that the thing only was $25,000 vis-a-vis your client. First, Judge, I don't disagree with you. They could have reached that stipulation, but there's nothing in this record to suggest that the parties and you must stipulate it. Who wants us to draw an inference, a conclusive inference? What you want to say is there's only one way to read that claim, that they say it's less than $30,000. And the way you want us to read the claim, say no jury could read it as meaning nothing, the thing they argue. You want to make it conclusive. I sort of don't get it. I don't want to suggest that it's a judicial admission, so it's binding for the rest of the case, but it's an admission, nonetheless, by a lawyer on the other side. In behalf of that party. I think we've exhausted this point. Thank you, Judge. I appreciate the chance to talk about it. Okay. Thank you. The question was asked why I didn't bring up this jurisdictional question in the district court before now. And I'll tell you, I had two or three years ago. Truth be told, you didn't bring it up even now. It's true that I didn't. Well, right. I brought it up at your suggestion, and we're all arguing that's exactly right. And I didn't bring it up even now. And I'll tell you why. I had a case, two cases, two or three years ago in district court where I filed a motion to remand back to state court because I did not think that the amount in controversy exceeded $75,000. In one of those cases I had less than $1,000 in contract benefits on an insurance policy that had not been paid. And in another one I had a little more than that, but still way below $75,000. And like and similar in other respects to this case, not only did the district court deny my request to remand it to state court, Judge McNamee called me into on an order to show cause, to show cause why I shouldn't be sanctioned by the Now, after that experience, I got a little gun shy. At one of those cases, it's called Walter v. United Benefit Life, I'm filing a notice of appeal here today. And so you'll see that case, and that's going to be one of the issues, should it have been remanded at my request. What do you think the procedure ought to be right now if we think there's any doubt about it? Do you think we ought to just remand it to state court? Do you think we ought to remand it for a hearing? I think you should remand it to state court. I think you have everything in front of you that the state court's going to have. You've got their petition. You've got the complaint. You've got us. Discretionary attorney's fees claim, what does that mean? Well, under Arizona law, under ARS 1234101, there is a discretionary claim for attorney's fees to the winning side in any action arising out of contract. And so this is the Arizona cases have held that insurance bad faith litigation arises out of a contract. But the contract claims, not tort claims. Well. But they're arising out of contract. Even the tort claim, if it arises out of a contract, you can recover attorney's fees. Either side can petition the court. And the statute says the judge may award attorney's fees. But it's discretionary with the court. How is that normally handled when it kicks in? Is it, I don't mean to pry, but I assume you're working on a contingency fee? Yes, sir. And if, let's say, you're successful in state court, or whatever, you're successful in any circuit, and I want my attorney's fees, is that handled on an hourly basis? Is that handled on a, do you say to the court, well, you know, my attorney's fee is X percent, and therefore my client should be, you know, the X percent ought to be added to the, how do those things get handled? The cases in Arizona say that you petition the court. One of the provisions of the statute that I didn't mention was that you cannot award more in attorney's fees than the client agreed to pay. And so what we usually do is submit to the court the contingency agreement. We tell the court what that percentage is, and then we also submit to the court the time records that we have kept throughout the litigation so that the court can make a judgment as to what an attorney fee would be appropriate. But time records are not useful without an hourly rate. Right. And how does the hourly rate get established in this particular context where you have a retainer agreement, the cost for contingency fee? Does a retainer agreement also contain an alternative hourly provision in it? Mine usually does not. And so what would you do? I don't want this to practice in federal court. I just want to make sure I ---- I think it's similar. We would submit the hours, and we would tell the court what our usual hourly rate is on hourly work. Maybe get a few friends to say which I have to give more than that. Right. You know the procedure. You've done this before, haven't you? But then you're capped by your contingency fee. But capped by the contingency. Capped by the contingency according to the statute. So if we're to, or we or the district court, if somebody were to value the demand, we'd have $50,001 that they've asked for, right, or $50,000 in one penny or whatever, in excess. I'm sorry, you asked for. Right. I'm sorry. I got it. $50,000. And then you ask for punitives, which are sort of notoriously hard to quantify. And then how would we deal with the contingency fee aspect of it? Presumably the contingency fee would be a maximum of a third of the $50,000. Well. I mean, you might get more than $50,000, but at a minimum would be a third of the $50,000. Right. And it's a bit speculative as well in the sense that it's a discretionary award. It isn't awarded automatically like court costs are. Right. But in capping the maximum you might get on a $50,001 award, the maximum you would get would be your normal fee agreement plus cost, which would be a third of the $50,000 plus whatever cost you have in it. Right. Yes. If the contingency fee was one-third, we would be capped at that amount. That's true. I see I've got just a few minutes left, I think, if this clock is correct. I want to. We have minus one and a half minutes left, but we forced your opponent to stay there for longer, so we're not going to let you get away quite so easy. Well, I just had two other short points to make. With respect to the lawyer, Mr. Schmidt, who was hired by Allstate to handle the arbitration, he decided to argue that my client was at fault in the accident, even though Allstate had taken the position on two other occasions that it was none of her fault. And he said when I asked him, what made you change your mind, he said, well, I investigated and I took a deposition of the opposing driver. And based on that. I don't quite understand the context of this. When the insurance company is a defendant, they're always going to put the blame on the claimant. Now we have a reverse situation. I mean, it just seems to me the litigation strategy always is that if you're an insurer and your client has been sued, you always tell the other side that they're not at fault. But now we have a different litigation situation. I mean, I don't know how they practice law in Arizona. I practice law in California. But I don't recall my ever telling a plaintiff's lawyer that I thought my client was at fault. I've had defense lawyers tell me that in clear liability situations, and we discuss damages and try to get the case settled. That's true. There are situations like that. But the insurance carrier frequently doesn't get into that until they're in the negotiation stage. Yes. And if they did that dishonestly or they evaluated it and found some fault on our client's part and told the claimant, no, we don't think there is, I wouldn't fault them for that necessarily. They're in an adversarial position. That has to do with liability issues. Right. Right. Now the issue now is a little different. I think the issue comes down to whether or not her injuries were fairly debatable. Not just the injuries. Just on the liability, on whose fault this accident was, Allstate conducted an investigation twice, once when the other driver made a claim against Mrs. Valdez, and again when Mrs. Valdez made a claim against Allstate. And in both of those situations, Allstate said this is 100 percent fault of the uninsured driver and none the fault of Mrs. Valdez are insured. Allstate made that determination. Then they turned it over to this lawyer who went to the arbitration and argued that it was Mrs. Valdez's fault. A new person, a new lawyer? A new lawyer got involved. And I asked him in deposition, well, Allstate told you that this was entirely the fault of the uninsured driver. Why in the world would you be going to the arbitration arguing it was her fault? And all he could say was, well, I took the deposition of the adverse driver and I decided to do that. What I ask, and I've asked it in my brief here, tell me one fact, one new fact that he learned that caused him to reach a different conclusion than Allstate had when they investigated. One fact or just something that caused him to switch the position of Allstate on whose fault this accident was and he couldn't come up with one single fact. And they haven't been able to come up with one here. Now, under Arizona law, is it, are certain duties on the part of the insurer triggered by the fact or when liability is reasonably clear? Certainly in first-party cases. Well, okay. And is that, in first-party cases, there would be a duty to settle triggered when liability is reasonably clear or to make a reasonable effort to settlement, right? Right. And has Arizona extended that to third parties or not? I don't believe so. Other than our Unfair Claims Practices Act, which does not have a private right of action. So we're, I don't believe so. I think they can, their duty is simply to, to Go to Montana. Insurance. Is it? It's considerably more pro plaintiff. I should go there for a number of reasons. It's a beautiful state. Well, what do you think the contours are of the fairly debatable rule in Arizona? I mean, that differs from state to state. In my view, it's, as the Supreme Court has said, it's an issue of fact for the jury in almost every case. I mean, certainly there are cases where our Supreme Court has said this is so clearly on one side that a summary judgment might be appropriate. But whether something is fairly debatable is not just an issue of did the insurance company believe it was fairly debatable, but, you know, is it, will the jury believe that it was fairly debatable? And in practically every case that I've seen, it's a jury question. Your theory was that they were jerking it around, that they forced arbitration as a way not to pay up the 15,000 uninsured. It's a fairly small claim. And so the insurance company has a great deal of leverage. Shouldn't have put her through that. That is our position. It should not have required the arbitration or made her jump through those hoops. Were there expenses? There were. And, in fact, she had. And would those pay in addition to 15,000? No. No, they came out of her pocket. And she also had an agreement with her lawyer that she would have to pay a greater percentage to her lawyer if the case went to arbitration. And so she had additional attorney's fees and additional costs, and she had to pay for half of the arbitrator as well. And so it cost her money to have to be forced to go through those. Did you get the deposition? Whose deposition? You said that the lawyer Schmitz did the deposition of the driver, the other driver. Yes. And do you have the deposition? I believe that it is in the all-state claims file. Yes, I believe we have it. It was produced? I believe it was. I haven't looked at it. The case has gotten a little bit old now, and I don't have a clear memory of studying it, but I believe that we do have it. I think it was made available to us. Well, unless there are other questions, I will submit what we've said. Thank you. Thank you. Case resolved. You will stand submitted. We'll next hear arguments in the case of Kahn v. Ashcroft. I enjoyed your brief stint in the non-immigration law. How does your shoulder feel? Well, after one surgery and another.
judges: Wallace, Kozinski, Thomas